UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MARIA HAYNES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. G-09-271 |
| § | |
| THE COMMUNITY HOSPITAL OF § | |
| BRAZOSPORT; agent BRAZOSPORT § | |
| REGIONAL HEALTH SYSTEM, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

Before the Court is the defendant The Community Hospital of Brazosport a/k/a Brazosport Regional Health System's ("Brazosport") motion for summary judgment (Document No. 10) and the plaintiff, Maria Haynes' response and supporting brief (Document No. 14). The Court has reviewed the motion, response, pleadings and proffered testimonies and determines that Brazosport's motion is meritorious and should be granted.

### II.   BACKGROUND

The plaintiff began her employment at Brazosport in 1978 as a nurse assistant. In 1985, she was promoted to the position of nurse's aid for Brazosport's Operating Department. Over the next three years, the plaintiff was trained in various positions, assumed more responsibility and was eventually promoted to the position of Operating Room Department Anesthesia Technician. In that capacity, she was Brazosport's sole anesthesia technician, providing assistance to the anesthesiologist and helped to prepare patients for surgery. She also provided assistance preparing the operating rooms for each surgery which necessitated sharing in the clean-up operations after each surgery and at the conclusion of the day. From time to time, the

plaintiff was required to order anesthesia supplies. To be sure, the position held by the plaintiff required specific training in operating room procedures and the ability to withstand the pressure that admittedly occurred because the operating room remained quite busy.

Patient surgeries were scheduled Monday through Friday, generally starting at 7:30 a.m. and concluding at approximately 3:00 p.m. Hence, the day for the plaintiff would begin at approximately 6:45 a.m. and conclude after 3:15 p.m. Up until 2005, the plaintiff, as all full–time employees, worked a five day work week and was on call for emergencies. However, in October 2005, the plaintiff married and moved to Buna, Texas, a three-hour one-way drive to the hospital and an equally long drive home.

Although the distance from her new residence to the hospital was a three-hour commute each way, the plaintiff chose not to terminate her employment. Instead, the plaintiff requested that Brazosport accommodate her by permitting her to work three (3), twelve (12) hour and half-days each week. In this manner, the plaintiff secured a 40-hour work week and would not suffer a loss in income or benefits. The evidence shows that Operating Room Department Director allowed the plaintiff to work the requested schedule.

In 2006, Brazosport came under new leadership, including a new anesthesia group led by Doctor Hubert Collins, the Chief Anesthesiologist. Shortly after the new team was in place, a needs assessment was completed and Brazosport determined that its anesthesia technician needed to be available during regularly scheduled surgeries. This meant that the plaintiff's work schedule would revert and that she would be required to work the same five-day schedule as other Operating Room Department full-time employees.

The new Operating Room Department Director informed the plaintiff, in December 2006, that she would be required to return to a regular work schedule. The plaintiff does not dispute

that the Director informed her that the reason for returning her schedule to a regular work-week schedule was to better serve "the department and provide consistent services for all scheduled cases." The plaintiff's request to continue her modified schedule was denied, and she was to return to the regular work schedule on January 7, 2007.

In January 2007, the plaintiff reported for work under the five-day work week schedule. Shortly after returning to the schedule, she requested intermittent leave under Brazosport's FMLA policy. The leave permitted the plaintiff to take off days when she "had issues with her diabetes." According to the plaintiff, by the summer of 2007, her diabetes had become uncontrolled, resulting in a hospitalization that caused her to miss several weeks of work. In August 2007, the plaintiff met with Human Resources seeking an accommodation due to her medical condition. The plaintiff sought to return to the earlier modified work schedule. In addition, she requested that she be allowed to take breaks as needed due to her diabetic condition. These requests were denied because the plaintiff had no physician's statement detailing the need for an accommodation. And, the plaintiff was fully aware of Brazosport's policy on this matter.

Human Resources offered the plaintiff part-time employment--three (3), eight (8) hour days per week. However, the plaintiff rejected part-time employment as it would mean the loss of medical benefits, FMLA leave, and other hospital benefits. As a result, the plaintiff once again began working a five-day work week. Approximately one year later, the plaintiff produced a doctor's note regarding her medical needs as it related to her work schedule. The note indicated that the plaintiff could work a four-day schedule and should be removed from any "on-call" hours. At the time however, the plaintiff was already on extended FMLA leave and she had not returned to work.

By July 1, 2008, the plaintiff had exhausted her FMLA leave but did not return to work. Instead of terminating the plaintiff, Brazosport placed the plaintiff on extended medical leave. Both the plaintiff's FMLA and extended medical leave were exhausted by November 15, 2008. Yet, the plaintiff failed to return to work. At that time, Brazosport terminated the plaintiff's employment for failure to return to work. The plaintiff had already filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June 2008, and upon receipt of a Notice of Right to Sue, commenced this lawsuit.

### III. CONTENTIONS OF THE PARTIES

#### A. The Plaintiff's Contentions

In essentially three claims, the plaintiff contends that she was discriminated against in that: a) Brazosport failed and refused to provide a reasonable accommodation for her disability by refusing to adjust her work schedule, permit extra breaks and other accommodations concerning her medical condition; (b) Brazosport violated the Americans With Disabilities Act ("ADA") in that she was treated less favorable than non-disabled employees; and (c) her termination was in retaliation for exercising her rights under the FMLA, the ADA and for demanding a reasonable accommodation.

#### B. The Defendant's Contentions

Brazosport disputes each of the plaintiff's claims of discrimination. In response to the plaintiff's contentions, and as the basis for its summary judgment claims, Brazosport asserts that the plaintiff received all of her entitlement to FMLA and medical leave benefits. In this regard, Brazosport points out that under the modified work schedule, the plaintiff was permitted to count her reduced hours as intermittent FMLA leave even though she had failed to produce a

physician's statement in compliance with Brazosport's policy. Hence, Brazosport contends, the plaintiff has not suffered discrimination under the FMLA.

Concerning the plaintiff's claim that she was refused a reasonable accommodation in her work schedule that would permit her to remain a full time employee, Brazosport points out that the plaintiff's need for an accommodation is a result of her move to Buna, Texas, in 2005, a three (3) hour drive to the work site. When new leadership demanded a five-day work week from the plaintiff in spite of her commute, the plaintiff claimed a medical need for continuing the modified schedule based on her diabetic condition. Hence, Brazosport argues that the "real" problem for the plaintiff was the commute, not her diabetes. Therefore, the plaintiff has no viable ADA claim.

Finally, Brazosport challenges the plaintiff's retaliatory termination claim. Brazosport asserts that chastisement by the plaintiff's supervision concerning the frequency and the length of her breaks does not constitute an adverse employment action. Likewise, the fact that her office was moved during renovations and she was required to walk one to four minutes occasionally to use the Department's phones and computers and the fact that Brazosport would not make permanent her modified schedule are not adverse employment actions. In essence, Brazosport asserts that the plaintiff refused or was unable to meet an essential job function, i.e., be available for scheduled surgeries, and was therefore unqualified for the position.

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant

or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V.     ANALYSIS AND DISCUSSION

First, the plaintiff asserts that Brazosport discriminated against her because it failed to offer her a reasonable accommodation in light of her ever-increasing medical condition; i.e., diabetes. To establish a *prima facie* case of failure to reasonably accommodate, a plaintiff must

6

establish that she was qualified to perform the essential functions of the job with or without a reasonable accommodation and that she was denied a reasonable accommodation that would have permitted her to fulfill the job requirements. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). An employer is required to provide a reasonable accommodation for known disabilities unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. *See* 42 U.S.C.§12112(b)(5)(A).

In the case at bar, it appears that the plaintiff was qualified to perform the job without an accommodation. Hence, the plaintiff's difficulty was not her disability. Before the change in schedule, the plaintiff performed her functions such that she was promoted from time to time and, as well, received favorable reviews even though she was a diabetic. The plaintiff, however, desired a shortened work week schedule only after she moved to Buna, Texas, in October 2005. It was then that the three hour commute from Buna to the job site appeared to cause the symptoms of her diabetes to worsen. At this time, the plaintiff became unqualified to fulfill the functions of the job. The plaintiff's unavailability during certain surgery days meant that Brazosport was short-staffed and placed, what the hospital determined to be, a serious burden on other staff, particularly those assigned to the operating room(s). The plaintiff does not deny these facts and even admits that when she used FMLA and medical leave to continue the modified schedule, she had difficulty with her diabetes. Moreover, she was never available for on-call duties.

In fact, Brazosport tried a modified schedule that did not work for either the plaintiff or the hospital. And, the truth is that even under a modified schedule, the plaintiff could not fulfill the duties of the position. This was the case, not based on her diabetes, but the fact that she was not readily available to perform all of the functions of the position. Therefore, while the plaintiff

was technically qualified to do the job, she was unable to fulfill the duties of the position of anesthesia technician. It was the plaintiff's impossible commute that created the need for an accommodation. Hence, the plaintiff became unqualified for the position. *See Grubb v. S.W. Airlines*, 296 Fed.Appx. 383, 388 (5th Cir. 2008).

The plaintiff's assertions concerning the fact that Brazosport did not recruit a part-time person to fill the staff shortage is folly. The plaintiff refused a part-time position when it was offered. The plaintiff's complaints concerning harassment when her desk was moved and that she was admonished for the number and length of breaks that she took are equally inconsequential. There is no evidence that any of the matters complained about affected a term or condition of the plaintiff's employment. Nor is there evidence that the plaintiff was sanctioned. *See Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 623 (5th Cir. 2000). Therefore, summary judgment is appropriate on this claim.

The plaintiff's claims under the FMLA and the ADA are equally unavailing. The plaintiff's demand for full-time pay and benefits when, in fact, she was unable to perform all the functions of the position on a reduced schedule, required Brazosport to create a new or modified position without assurance that the plaintiff could or would fulfill the requirements. *See Cooper v. UPS, Inc.*, 368 Fed.Appx. 469, 477. In fact, the plaintiff rejected all efforts to accommodate her condition, that condition being a three-hour commute.

Likewise, the plaintiff's FMLA claim fails because she exhausted the time that the statute allows. And, when the plaintiff failed and refused to return to work, she was terminated. Brazosport's reason for terminating the plaintiff rests on her failure to accept the proffered accommodation and/or her failure to return after she exhausted her benefits. Each of these is a legitimate non-discriminatory basis for terminating the plaintiff's employment. *See McDonnell*

8

*Douglas Corp. v. Green*, 411 U.S. 792, 802. The plaintiff has failed to show that either of these bases was a pretext. *Id*. Therefore, summary judgment is appropriate on the plaintiff's ADA and FMLA claims.

Finally, the plaintiff asserts that Brazosport terminated her in retaliation for exercising or engaging in protected activity. The protected activity that the plaintiff identifies concerns her request for a four-day work schedule and for unspecified breaks. In addition, the plaintiff points out that her supervisor badgered and harassed her for taking breaks while smokers, for example, received preferential treatment during their breaks. These things occurred, according to the plaintiff, because of her request for an accommodation. In order to establish her claim for retaliation, the plaintiff must establish that she engaged in a protected activity, that an adverse employment action was suffered by her, and that a causal link exists between her participation in the protected activity and the adverse employment action. *See Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001).

Even if it were true that the plaintiff has established a *prima facie* case of retaliation, Brazosport has stated legitimate bases for its actions. First, it must be acknowledged that supervisory remarks concerning the length and frequency of breaks are not adverse employment actions. The fact that the plaintiff suffered with diabetes does not exempt her from the job requirement to function in the position. Nor does it permit her to use her diabetic condition as a basis to take extended breaks as Brazosport complained. Nevertheless, even if the plaintiff's supervisor chastised her, it did not occur when the plaintiff was treating her diabetic condition. Moreover, the chastisement did not result in a written reprimand or a reduction in pay or responsibility. The plaintiff admits that none of the remarks made to her were derogatory or

concerned her diabetic condition.  Hence, the remarks and the visits to the plaintiff while she was on break, even if true, are not actionable.  *See Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir. 1999).

Finally, the plaintiff's contention that her termination was retaliatory, while an adverse employment action, is unfounded.  It is undisputed that the plaintiff failed to report to work after her May 2008 FMLA leave.  It was during this absence that the plaintiff, for the first time, provided Brazosport with a formal written letter from her physician stating the terms of an accommodation.  The accommodation would provide the plaintiff with a four-day work week, (full-time pay) with no on-call or weekend duties.  Therefore, Brazosport rejected this as inconsistent with its needs. The hospital offered part-time employment, which was refused, and the plaintiff remained off work by her own choosing until both her FMLA and medial leave expired in November 2008.  She never returned to work.

Brazosport had a legitimate non-discriminatory basis for terminating the plaintiff.  There is no evidence that the plaintiff was terminated because she engaged in a protected activity.  In fact, the plaintiff's benefits expired and she refused to return to work under the schedule offered.  Whatever "animus", if any, may have been expressed by the plaintiff's supervisor was not known by the plaintiff until discovery was conducted in this case.  And, there is no evidence that the alleged "animus" was the basis for terminating the plaintiff.  Again, summary judgment is appropriate on this claim.

## VI. CONCLUSION

Based on the discussion, analysis and reasoning heretofore expressed, the Court is of the opinion that the Brazosport's motion for summary judgment should be and it is hereby GRANTED.

**It is so ORDERED.**

SIGNED at Houston, Texas this 5th day of January, 2011.

_____
Kenneth M. Hoyt
United States District Judge